IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TOMAS MARISCAL MERAZ,<br><br>  Petitioner,<br><br>vs.<br><br>PAMELA BONDI, Attorney General; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; DEPARTMENT OF HOMELAND SECURITY, TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; IMMIGRATION AND CUSTOMS ENFORCEMENT, DAREN K. MARGOLIN, Director for Executive Office for Immigration Review; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DAVID EASTERWOOD, Acting Director, Fort Snelling Field Office Immigration and Customs Enforcement; and WARDEN OF MCCOOK DETENTION CENTER, in their official capacity,<br><br>  Respondents. | **8:26CV27**<br><br>**MEMORANDUM AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |

In this action for habeas corpus relief pursuant to 28 U.S.C. § 2241, Petitioner Tomas Mariscal Meraz, an undocumented alien who is a citizen of Mexico and a resident of Bloomington, Minnesota, challenges his detention without bond pursuant to 8 U.S.C. § 1225(b)(2)(A) by Immigration and Customs Enforcement (ICE) at the McCook Detention Center in McCook, Nebraska. Filing 1 at 5 (¶ 14), 7 (¶ 1); Filing 12 at 5 (¶ 14), 7 (¶ 1) (Amended Petition). Mariscal Meraz alleges that he is not an arriving alien and is not seeking admission. Filing 1 at 5 (¶ 14); Filing 12 at 5 (¶ 14). He alleges that he entered the United States without inspection in 2007 or 2008 and has remained here continuously since 2007 or 2008. Filing 1 at 10 (¶ 10); Filing 12 at 10 (¶ 10). He alleges that he was taken into custody on or about December 4, 2025, and is facing

removal proceedings. Filing 1 at 10 (¶ 12); Filing 12 at 10 (¶ 12). He asserts that his detention without bond is unlawful on various grounds. Filing 1 *passim*; Filing 12 *passim*. The Court entered an Order to Show Cause requiring Respondents—at that time, all federal officials—to make a return certifying the true cause of Mariscal Meraz's detention and why his Petition should not be granted. Filing 5. After the State Respondent—the Warden of the McCook Detention Center—was added to the Amended Petition, Filing 12, at the Court's direction, the Court set a hearing on the matter for February 12, 2026, Filing 14. After that hearing, the Court now enters this ruling on Mariscal Meraz's Petition.

Mariscal Meraz's Petition and Amended Petition bear considerable similarity to the petitions filed in this Court on behalf of two other undocumented aliens challenging their detention, Luciano Vargas Lopez and Joel Ramirez Melgar. The Court denied relief on both of their petitions. *See Vargas Lopez v. Trump*, No. 8:25CV526, ___ F. Supp. 3d ___, 2025 WL 2780351 (D. Neb. Sept. 30, 2025); *Ramirez Melgar v. Bondi*, No. 8:25CV555, 2025 WL 3496721 (D. Neb. Dec. 5, 2025). However, the legal landscape has changed somewhat since those decisions. While decisions following this Court's reasoning in *Vargas Lopez* and *Ramirez Melgar* remain in the minority, the Fifth Circuit has now weighed in on the issues in *Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026), in a majority panel decision authored by Edith H. Jones, Circuit Judge. In that decision, the Fifth Circuit took essentially the same position that the undersigned did based on essentially the same reasoning that the undersigned used, although with somewhat more expansive analysis. Thus, the only United States Circuit Court of Appeals to squarely address these legal issues as of the date of this writing has agreed with this Court's previous decision. For the reasons stated below, Mariscal Meraz's Petition, as amended, is denied.[1]

---

[1] All further citations to Mariscal Meraz's claims and arguments will be to his Amended Petition, Filing 12.

# I.  INTRODUCTION

## A.  Summary of the Legal Context

Some legal context would be helpful to understanding the facts, proceedings, and arguments in this case. Section 2241 of Title 28 of the United States Code extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Tomas Mariscal Meraz. *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004) ("[Alien] Petitioners contend that they are being held in federal custody in violation of the laws of the United States. . . . Section 2241, by its terms, requires nothing more."), *judgment entered*, No. 04A41, 2004 WL 7372970 (U.S. July 16, 2004); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) ("We note at the outset that the primary federal habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon the federal courts to hear these cases." (citing 28 U.S.C. § 2241(c)(3))). The applicable procedures for disposition of a habeas corpus petition under 28 U.S.C. § 2241 are set out in 28 U.S.C. § 2243, which among other things requires a court to "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243.

Two provisions of the Immigration and Nationality Act (INA) at issue here provide for detention of aliens. Aliens detained pursuant to INA section 235(b), codified at 8 U.S.C. § 1225(b), are not eligible for release on bond. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). In contrast, INA section 236(a), codified at 8 U.S.C. § 1226(a), "permits the Attorney General to release [specified] aliens on bond, '[e]xcept as provided in subsection (c) of this section.'" *Jennings*, 583 U.S. at 303 (quoting 8 U.S.C. § 1226(a)). Mariscal Meraz contends that "[t]he plain

language of the statute compels the Court to conclude that Respondents apprehended and detained Petitioner consistent with § 1226, and not § 1225(b)(2)." Filing 12 at 23 (¶ 43). On the other hand, Federal Respondents contend that Mariscal Meraz was lawfully detained without possibility of bond pursuant to § 1225. Filing 7 at 4.

### B.  Factual Background

Mariscal Meraz alleges that he is a native and citizen of Mexico who entered the United States without inspection in 2007 or 2008 and has remained here continuously since 2007 or 2008. Filing 12 at 10 (¶¶ 9–10). He does not allege where he entered the United States. He alleges that he did not have any contact with immigration authorities upon entering the United States in 2007 or 2008. Filing 12 at 10 (¶ 11). However, Federal Respondents' declarant states, "Petioner [sic] entered the United States at an unknown time and at an unknown place. In August 2008, Border Patrol granted the Petitioner three voluntary returns to Mexico." Filing 9 at 3 (¶ 10) (Dec. of Deportation Officer Seth Patrin). Federal Respondents add that Mariscal Meraz was not admitted or paroled into the United States. Filing 7 at 2 (citing Filing 9 at 3 (¶ 9). Mariscal Meraz does not allege in his Complaint whether he has any family in the United States, nor does he allege whether or where he has been employed since entering the United States.  However, at the hearing on his Petition, Mariscal Meraz's counsel stated that she "would say or guess that, yes, he has worked in the United States" and that he did not have a work authorization that she was aware of.[2]

Mariscal Meraz alleges that he was taken into custody by Federal Respondents on or about December 4, 2025. Filing 12 at 10 (¶ 12). However, he does not allege where, when, how, or for what reason he was taken into custody. Federal Respondents' declarant states, "ICE arrested

---

[2] The Court has made use of an unedited draft of the transcript from the hearing. Thus, the Court does not provide pinpoint citations to statements drawn from that transcript.

Petitioner during Operation Metro Surge [in Minneapolis, Minnesota]." Filing 9 at 3 (¶ 12).

Federal Respondents' declarant states further,

> On December 18, 2025, ICE served Petitioner Form I-862, Notice to Appear. Petitioner was charged as removable from the United States under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

Filing 9 at 3 (¶ 13). The parties agree that Mariscal Meraz is currently detained at the McCook Detention Center in McCook, Nebraska. Filing 12 at 4 (¶ 13); Filing 9 at 4 (¶¶ 14, 17).

Mariscal Meraz does not allege that any specific proceedings in immigration court have occurred since his detention, but he does allege without amplification that "[t]he immigration court maintains it lacks legal authority to set a bond order." Filing 12 at 2 (¶ 2). Federal Respondents add that on January 29, 2026, after Mariscal Meraz filed his original Petition, an immigration judge denied Mariscal Meraz's request for release on bond citing lack of jurisdiction under 8 U.S.C. § 1225. Filing 7 at 2 (citing Filing 9 at 4 (¶ 15)). Federal Respondents' declarant states, "Petitioner is currently in immigration proceedings. Petitioner currently has a master calendar hearing in immigration court scheduled for February 12, 2026." Filing 9 at 4 (¶ 16).

At the hearing, when the Court asked if Mariscal Meraz conceded that he is an applicant for admission within the meaning of § 1225(a)(1), Mariscal Meraz's counsel responded that Mariscal Meraz does not concede that he is an applicant for admission. Counsel took the position that the Notice to Appear does not indicate that Mariscal Meraz was an arriving alien or an applicant for admission but only that he arrived without authorization into the United States. However, his counsel later conceded that Mariscal Meraz "does wish to stay in this country," but he could do so without seeking admission such as by seeking asylum. Mariscal Meraz's counsel also conceded that if the Court finds that Mariscal Meraz was properly included within

5

§ 1225(b)(2), he would not be eligible for a bond. That said, Mariscal Meraz's counsel disputed that Mariscal Meraz should be included within § 1225(b)(2).

### C. Procedural Background

#### 1. Mariscal Meraz's Original Petition

Mariscal Meraz filed his original Petition in this matter on January 16, 2026. Filing 1. In an Order to Show Cause, filed January 22, 2026, the Court set deadlines for Respondents to make a return and a deadline for Mariscal Meraz to file a reply. Filing 5 at 7. The Court also stated that it would set a prompt hearing on this matter upon the filing of Mariscal Meraz's proof of service of the Petition and the Show Cause Order. Filing 5 at 7. Mariscal Meraz filed a Certificate of Service of his Petition and the Order to Show Cause "via overnight FedEx delivery" on January 28, 2026. Filing 6.

The Court's review of the filings in this matter raised significant doubt that the Court had subject-matter jurisdiction. *See Thigulla v. Jaddou*, 94 F.4th 770, 773 (8th Cir. 2024) ("[A] federal court always has jurisdiction to determine its own jurisdiction." (quoting *United States v. Harcevic*, 999 F.3d 1172, 1178 (8th Cir. 2021), in turn quoting *United States v. Ruiz*, 536 U.S. 622, 628 (2002))). These concerns arose from the failure of Mariscal Meraz to name the proper respondent to a habeas petition, that is, "the person who has custody over [the petitioner]." Filing 11 at 2–3 (citing 28 U.S.C. § 2242; 28 U.S.C. § 2243; and *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004)). The Court noted that Mariscal Meraz had named only federal officials as respondents in this case, although he asserted that he is in physical custody in the McCook County Detention Center in McCook, Nebraska. Filing 11 at 3 (citing Filing 1 at 4–5 (¶¶ 14–15)). Under these circumstances, it appeared to the Court that a critical requirement for core habeas relief in this case was missing from Mariscal Meraz's original Petition. Filing 11 at 3. However, rather than dismiss the original Petition for failure to establish this Court's subject-matter jurisdiction, the Court

concluded that the interest of justice and the expedited disposition of § 2241 habeas petitions contemplated by § 2243 would be best served by allowing Mariscal Meraz the opportunity to amend his Petition to attempt to establish this Court's subject-matter jurisdiction by naming a proper physical custodian. Filing 11 at 3. Therefore, the Court ordered that Mariscal Meraz would have to and including February 12, 2026, to file an Amended Petition for Writ of Habeas Corpus identifying a proper physical custodian as a respondent and to file proof of service upon that proper physical custodian. Filing 11 at 4. The Court stated that upon the filing of such proof of service, the Court would set a hearing on the Amended Petition. Filing 11 at 4.

### 2. Mariscal Meraz's Amended Petition

On February 6, 2026—well before the deadline set by the Court—Petitioner filed an Amended Petition adding "Warden of McCook Detention Center, in their official capacity," as a respondent and alleging that the Warden "has immediate physical custody of Petitioner pursuant to a contract with ICE to detain noncitizens and is a legal custodian of Petitioner." Filing 12 at 1, 7 (¶ 23). The Court will refer to the Warden of McCook Detention Center as State Respondent.

In his Amended Petition, Mariscal Meraz asserts the same five claims for relief that he asserted in his original Petition. In Count One, he seeks declaratory relief pursuant to 28 U.S.C. § 2201 "that [he] is not subject to detention under 8 U.S.C. § 1225(b)(2)." Filing 12 at 26 (¶ 52). Rather, he is "detained pursuant to 8 U.S.C. § 1226(a)(1)," and he is "eligible to seek a bond redetermination hearing under § 1226." Filing 12 at 26 (¶¶ 53–54).

In Count Two, Mariscal Meraz alleges violations of the Immigration and Nationality Act (INA), 8 U.S.C. § 1226(a) and 8 U.S.C. § 1225(b)(2). Filing 12 at 26. In support of this claim, he alleges the following:

> 58.     The denial of Mariscal Meraz's bond eligibility is in violation of 8 U.S.C. § 1226(a)(2)(A), which specifically makes him eligible for bond.

59.    8 U.S.C. § 1225(b)(2)(A) cannot apply as it only applies to those "seeking admission" at the time of detention and Petitioner was not "seeking admission["] at the time he was detained. 8 U.S.C. § 1225(b)(2)(A).

Filing 12 at 27 (¶¶ 58–59).

In Count Three, Mariscal Meraz alleges violation of his Fifth Amendment due process rights. Filing 12 at 27. In support of this claim, he alleges the following:

62.    Mariscal Meraz is not subject to mandatory custody under the Immigration & Nationality Act and is therefore entitled to a bond hearing in which a neutral arbiter may determine the justification for his continued detention under 8 U.S.C. § 1226(a)(2)(A), the denial of which constitutes a violation of the Fifth Amendment's guarantee of due process.

Filing 12 at 27 (¶ 62).

In Count Four, Mariscal Meraz alleges violation of 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 as a result of unlawful denial of release on bond. Filing 12 at 27. The essence of this claim is that "[t]he application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. § 236.1, 1236.1, and 1003.19." Filing 12 at 28 (¶ 67).

In Count Five, Mariscal Meraz alleges violation of the Administrative Procedures Act (APA) by agency policies that are contrary to law and arbitrary and capricious. Filing 12 at 28. The essence of this claim is the following:

72.    [T]he Board has adopted a policy and practice of applying § 1225(b)(2) to Petitioner and others in the same position.

73.    Respondents through its recent administrative decision failed to articulate any reasoned explanations for new interpretation of the Act. The Board's decision represents a change in the agencies' policies and positions that negates the plain language of the Act, the will of Congress, and decades of administrative precedent.

74.    The application of § 1225(b)(2) to Petitioner is arbitrary, capricious, and not in accordance with law, and as such, it violates the APA. See 5 U.S.C. § 706(2).

Filing 12 at 29–30 (¶¶ 72–74).

8

As relief, Mariscal Meraz asks the Court to do the following:

1.      Assume jurisdiction over this matter.

2.      Issue an order restraining Respondents from attempting to move Mariscal Meraz from Nebraska or Minnesota during the pendency of this Petition.

3.      Issue an order requiring Respondents to provide 72-hour notice of any intended movement of Mariscal Meraz.

4.      Expedite consideration of this action pursuant to 28 U.S.C. § 1657 because it is an action brought under 28 U.S.C. § 153.

5.      Order Respondents to provide Petitioner with a bond redetermination hearing consistent with 8 U.S.C. § 1226 within five business days of this Court's order;

6.      Find that Respondents' administrative decision is arbitrary and capricious in violation of the Administrative Procedures Act.

7.      Order the Omaha NE Immigration Court not to follow the Board of Immigration Appeal's decision in Matter of Jonathan Javier Yajure Hurtado, Respondent, 29 I. & N. Dec. 216 (BIA 2025) and grant individuals who entered without inspection a bond redetermination hearing consistent with 8 U.S.C. § 1226.

8.      Declare that Petitioner's detention absent a bond hearing violates the Due Process Clause of the Fifth Amendment.

9.      Grant Mariscal Meraz reasonable attorney fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A).

10.     Grant all further relief this Court deems just and proper.

Filing 12 at 30–31 (Prayer for Relief).

On February 6, 2026, Petitioner also filed a Certificate of Service upon the Warden of the McCook County Detention Center via certified priority mail of the Amended Petition, Civil Case Cover Sheet, Motion for Admission Pro Hac Vice, and the Order to Show Cause. Filing 13.

*3.  The Briefing and Hearing*

Prior to the Court's Order granting Mariscal Meraz leave to amend his Petition to attempt to establish subject-matter jurisdiction, Federal Respondents and Mariscal Meraz had completed their briefing of the Petition. Specifically, on January 30, 2026, Federal Respondents filed a

Response to the Petition for Writ of Habeas Corpus, an Index in Support of Response, and a Declaration of Deportation Officer Seth Patrin and two exhibits to the Declaration. Filing 7; Filing 8; Filing 9. Mariscal Meraz then filed his Reply to Respondents['] Answer to Petition for Writ of Habeas Corpus on February 3, 2026. Filing 10. State Respondent has not appeared or filed any return in response to the Amended Petition.

On February 9, 2026—after Mariscal Meraz filed his Amended Petition—the Court filed an Order setting a hearing on Mariscal Meraz's Petition for Writ of Habeas Corpus, as amended, for Thursday, February 12, 2026, at 2:00 p.m. Filing 14 at 2. The Court stated that the hearing would consist of oral arguments and would be based on written submissions already in the record at that time. Filing 14 at 2. However, the Court set a deadline of February 10, 2026, for any party to file a motion to present testimony of a witness or witnesses. Filing 14 at 2. No party filed such a motion.

On February 9, 2026, the Federal Respondents filed a Notice of Supplemental Authority citing *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026). On February 9, 2026, Mariscal Meraz's counsel filed a Motion to Appear Remotely for the hearing on Mariscal Meraz's Petition, Filing 16, which the Court granted, Filing 17.

The Court held the hearing as scheduled. Filing 18 (hearing minutes). However, owing to a technical glitch on the Court's end, Mariscal Meraz's counsel was not able to appear by videoconferencing but only telephonically. Counsel for the Federal Respondents appeared in person. The parties' presentations were brief but informative.

## II.  LEGAL ANALYSIS

### A.  Statutes Applicable to Mariscal Meraz's Claims

Several statutes are relevant to Mariscal Meraz's claims. Although the Court addressed briefly some of those statutes above in § I.A., those and others merit further discussion here. The

statutes at issue relate to habeas corpus petitions and to detention of aliens under the INA pending a determination of admissibility or removability.

Article I, § IX of the United States Constitution states, "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in cases of Rebellion or Invasion the public Safety may require it." "In enacting the present Title 28 of the United States Code [in 1948], Congress largely recodified the federal courts' pre-existing habeas authority in §§ 2241 and 2243, which, respectively, confer the power to grant the writ and direct the issuing court to 'dispose of the matter as law and justice require.'" *Jones v. Hendrix*, 599 U.S. 465, 473 (2023) (citing 62 Stat. 869, 964–65). As the Court observed above in § I.A., 28 U.S.C. § 2241 extends the writ of habeas corpus *inter alia* to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has recognized that § 2241(c)(3) confers on the District Court jurisdiction to hear habeas corpus challenges to the legality of the detention of aliens, such as Petitioner Tomas Mariscal Meraz. *Rasul*, 542 U.S. at 483–84; *Zadvydas*, 533 U.S. at 687. Federal Respondents do not challenge this Court's subject-matter jurisdiction over Mariscal Meraz's Petition for Writ of Habeas Corpus, and the Court is satisfied that it now has such jurisdiction. District Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful. *See Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *4 (D. Minn. Aug. 15, 2025) (collecting cases).

The issue at the center of this case is the interplay among various statutes in the INA to which undocumented aliens present in the United States are subject. The statutory provision that Mariscal Meraz has been charged with violating provides as follows:

11

### (6) Illegal entrants and immigration violators

#### (A) Aliens present without admission or parole

##### (i) In general

> An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.

8 U.S.C. § 1182(a)(6)(A)(i) (codifying INA § 212(a)(6)(A)(i)); Filing 9-1 (Notice to Appear).

Federal Respondents' declarant states further,

> On December 18, 2025, ICE served Petitioner Form I-862, Notice to Appear. Petitioner was charged as removable from the United States under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

Filing 9 at 3 (¶ 13); *see also* Filing 9-1. Such a Notice initiates removal proceedings pursuant to 8 U.S.C. § 1229a. *See* Filing 9-1 at 1 (Notice to Appear stating that it was "[i]n removal proceedings under section 240 of the Immigration and Nationality Act," *i.e.*, 8 U.S.C. § 1229a); *see also* 8 U.S.C. § 1229a(a)(2) ("An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a) of this title."). Section 1231 of Title 8 provides for the detention and removal of aliens ordered removed. *See* 8 U.S.C. § 1231.

Mariscal Meraz's Petition is premised on what he asserts is a critical distinction between aliens who present at a port of entry and those who evaded inspection and are only later found in the United States. Until 1996, his position had some merit under the then-prevailing statutory scheme. As Edith H. Jones, Circuit Judge, explained in a decision of the Fifth Circuit Court of Appeals in *Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026),

> Before 1996, the detention provisions in the Immigration and Nationality Act (INA) distinguished between aliens who presented at a port of entry and those

12

who evaded inspection. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222–24 (BIA 2025); *see also Hing Sum v. Holder*, 602 F.3d 1092, 1100 (9th Cir. 2010); 8 U.S.C. §§ 1225(a), 1251(a) (1994). Aliens who arrived at a port of entry were subject to mandatory detention until the conclusion of the exclusion process and could not request release on bond. *Id.* at 223. In contrast, aliens who evaded inspection and were apprehended months or years later could seek release on bond pending deportation proceedings. *Id.* In this and other ways, the statute thus afforded greater procedural and substantive rights to aliens who bypassed entry procedures. *See* H.R. Rep. No. 104-469, pt. 1, at 225 (1996) ("[I]llegal aliens who have entered the United States without inspection gain equities and privileges in immigration proceedings that are not available to aliens who present themselves for inspection.").

*Buenrostro-Mendez*, 2026 WL 323330, at *1. However, as Judge Jones explained, "The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) aimed to reduce this incongruity." *Id.* Specifically, "[i]n 8 U.S.C. § 1225(a)(1), Congress provided for the inspection by immigration authorities of aliens present in the country together with aliens arriving at the border." *Id.*

In pertinent part, § 1225(a) provides,

**(a) Inspection**

**(1) Aliens treated as applicants for admission**

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

\*\*\*

**(3) Inspection**

All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

8 U.S.C. § 1225(a)(1), (3); *see also Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) ("[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is

treated as 'an applicant for admission.' [8 U.S.C.] § 1225(a)(1). Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law. [8 U.S.C.] § 1225(a)(3)."). Thus, § 1225(a)(1) provides that "[a]liens who meet that statutory definition qualify as applicants for admission 'whether or not [they arrived] at a designated port of arrival.'" *Buenrostro-Mendez*, 2026 WL 323330, at *2 (quoting 8 U.S.C. § 1225(a)(1)). "Following the passage of IIRIRA, then, an alien's status as an applicant for admission does not turn on where or how the alien entered the United States." *Id.*

Section 1225(b)(1) provides for "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i), in turn citing §§ 1182(a)(6)(C), (a)(7)). It also applies "to certain other aliens designated by the Attorney General in his discretion." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(iii)). No party has argued that § 1225(b)(1) applies to Mariscal Meraz.

According to the Supreme Court, "Section 1225(b)(2) is broader" than § 1225(b)(1). *Id.* Specifically, "[i]t serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Id.* (citing 8 U.S.C. §§ 1225(b)(2)(A), (B)). In pertinent part, § 1225(b)(2) states the following:

> **(2) Inspection of other aliens**
>
> **(A) In general**
>
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). Section 1225(b) does not include a warrant or an arrest requirement for the detention of such an alien. It also has no provision for release on bond of an alien detained under it. *See Jennings*, 583 U.S. at 297 (explaining that until removal proceedings end, "nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."); *see also Buenrostro-Mendez*, 2026 WL 323330, at *2.

On the other hand, 8 U.S.C. § 1226 provides for arrest, detention, and the potential for release of certain aliens on bond. Section 1226(a) provides in pertinent part,

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--

> **(1)** may continue to detain the arrested alien; and

> **(2)** may release the alien on--

>> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

>> **(B)** conditional parole[.]

8 U.S.C. § 1226(a)(1), (2). The exception in subsection (c) is for the detention of defined "criminal aliens," 8 U.S.C. § 1226(c), which is not applicable in this case. Thus, this statute as amended by the IIRIRA "also contains provisions applicable to aliens in general, including those who are not applicants for admission." *Buenrostro-Mendez*, 2026 WL 323330, at *2 (citing 8 U.S.C. § 1226).

Unlike § 1225(b), § 1226(a)(2)(A) permits, but does not require, the Attorney General to release detained aliens on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General." *See also* 8 C.F.R. §§ 236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

15

*Buenrostro-Mendez*, 2026 WL 323330, at *2.[3]

Notwithstanding the 1996 amendments to eliminate the incongruity between aliens presenting at the border and those found in the United States, governmental policies led to different results. *Id.* at *3 ("From 1997 to 2025, successive presidential administrations and many immigration judges treated unadmitted aliens as being subject to § 1226(a) rather than § 1225(b)(2)."). A recent sea change in presidential administration policy has led to far more detentions without bond of aliens found in the United States, and the Board of Immigration Appeals (BIA) affirmed the statutory basis for the policy change:

> [I]n July 2025, the Board of Immigration Appeals (BIA) decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, which reconsidered the statutory framework and concluded that aliens who enter the United States without inspection and admission are subject to mandatory detention under § 1225(b)(2). In reaching that conclusion, the BIA explained that "[r]emaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'" *Hurtado*, 29 I. & N. Dec. at 228. Accordingly, unadmitted aliens apprehended anywhere in the United States are ineligible for release on bond, regardless of how long they have resided inside the United States. *Id.* at 225.

*Buenrostro-Mendez*, 2026 WL 323330, at *3.

Mariscal Meraz asserts that he should still be eligible for release on bond pursuant to § 1226(a). Respondents argue that he is properly detained without bond under § 1225(b)(2).

### B. Mariscal Meraz Fails to Prove He Is Eligible for Release on Bond Under § 1226(a)

As mentioned above, Mariscal Meraz bears the burden of demonstrating by a preponderance of the evidence that his detention without bond is unlawful. *See Maldonado*, 2025

---

[3] As Judge Jones pointed out,

Because § 1226 is not limited to applicants for admission, it also covers numerous grounds of deportability, including for admitted aliens who overstay or violate the terms of their visas, engage in conduct that renders them removable, or were improperly admitted.

*Buenrostro-Mendez*, 2026 WL 323330, at *2.

16

WL 2374411, at *4 (collecting cases). The Court concludes that he cannot carry that burden for several reasons.

As a starting point, the Court asked Mariscal Meraz's counsel if Mariscal Meraz was willing to make the same concessions that the petitioners did in *Buenrostro-Mendez*. In that case,

> The petitioners concede that they are applicants for admission within the meaning of § 1225(a)(1). At the time ICE apprehended them, they were present in the United States and had not been admitted. Presence without admission deems the petitioners to be applicants for admission. *Id.*

> Nor do the petitioners dispute that if § 1225(b)(2)(A) applies to them, it would require their detention without eligibility for bond. The statute unambiguously provides for mandatory detention.

*Buenrostro-Mendez*, 2026 WL 323330, at *4. In this case, Mariscal Meraz declines to make the first concession. He does make the second one, although he contends that § 1225(b)(2)(A) does not apply to him. The Court considers below *inter alia* whether Mariscal Meraz's position on these issues is determinative of his entitlement to habeas relief pursuant to § 2241.

1. *Mariscal Meraz Is an "Applicant for Admission" Despite His Refusal to Concede the Point*

When Mariscal Meraz's counsel was asked at the hearing if Mariscal Meraz was willing to make the first concession set out in *Buenrostro-Mendez*, his counsel declined to do so. Mariscal Meraz argues that the Notice to Appear, Filing 9-1, does not indicate that he is an arriving alien or an applicant for admission, but only that he arrived without authorization into the United States. Although Mariscal Meraz refuses to concede the first point, his "[p]resence without admission deems [him] to be [an] applicant[ ] for admission." *Buenrostro-Mendez*, 2026 WL 323330, at *4 (citing 8 U.S.C. § 1225(a)(1)). Mariscal Meraz is an "applicant for admission" under the plain language of § 1225(a)(1) in that he is "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a) (defining "applicant for admission").

17

More specifically, Mariscal Meraz is an "applicant for admission" because of his presence in the United States without admission is consistent with the conclusion of the BIA in *Hurtado* and the Supreme Court in *Jennings*. In *Hurtado*, the BIA held as follows:

> Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings. See *Jennings*, 583 U.S. at 300[.]

*Hurtado*, 29 I&N Dec. at 220. In *Jennings*, the Supreme Court explained,

> [A]n alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." [8 U.S.C.] § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. [8 U.S.C.] § 1225(a)(3).

*Jennings*, 583 U.S. at 287. Just because Mariscal Meraz illegally remained in this country for years does not mean that he is suddenly not an "applicant for admission" under § 1225(a)(1). Rather, he was "present" in this country but "has not been admitted," so he is treated as "an applicant for admission." *Id.* Indeed, the 1996 IIRIRA aimed to reduce the incongruity between aliens who presented at a port of entry and those who evaded inspection before they were found in the United States. *Buenrostro-Mendez*, 2026 WL 323330, at *1.

Furthermore, evidence and representations of counsel at the hearing show that Mariscal Meraz was present and working in the United States without having been admitted or inspected. According to his counsel, Mariscal Meraz also "does wish to stay in this country." As a matter of plain language, this evidence makes him an "applicant for admission." Thus, he fits squarely within the definition of "applicant for admission" in § 1225(a)(1).

### 2.  Mariscal Meraz's Purported Distinction Between "Applicant for Admission" and "Seeking Admission" Is Unpersuasive

Mariscal Meraz attempts to avoid the conclusion that he is subject to detention without bond pursuant to § 1225(b)(2) by asserting that he is not "seeking admission," even if he is an "applicant for admission." Filing 12 at 5 (¶ 14). He argues that § 1225(b)(2)(A) provides in part,

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). At the hearing, Mariscal Meraz argued that the way this Court reads the statute ignores the phrase "seeking admission" in the same way that the Fifth Circuit did in *Buenrostro-Mendez*. His argument is that if Congress had intended for people from within the United States who were not seeking admission to be included within the subsection, there is a large part of the subsection that could have been taken out. Specifically, Mariscal Meraz argued that everything after the first phrase of the statute quoted above ("[i]n the case of an alien who is an applicant for admission") could be eliminated, so the statute would simply read, "In the case of an alien who is an applicant for admission, the alien shall be detained." Mariscal Meraz argues that "seeking admission" implies some kind of action that is currently happening, which he likened to "they're knocking on the door to come in." He argues that he is not "seeking admission."

As this Court has previously explained, *see Ramirez Melgar v. Bondi*, No. 8:25CV555, 2025 WL 3496721, at *13–14 (D. Neb. Dec. 5, 2025), this argument fails because "applicant for admission" is clearly synonymous with "alien seeking admission" in the context of § 1225(b)(2). The statute states that it applies "in the case of an alien who is an applicant for admission," so that the subsequent reference to "an alien seeking admission" must be to that "alien who is an applicant for admission." Furthermore, a synonym for "applicant" is "one who seeks an office, honor, position, or award." *See* https://www.merriam-webster.com/thesaurus/applicant. Thus, there can

be little doubt that "an alien who is an applicant for admission" is synonymous with "an alien seeking admission." Indeed, in *Jennings*, the Supreme Court referred to "aliens seeking entry into the United States" as "'applicants for admission' in the language of the statute." *Jennings*, 583 U.S. at 297.

In *Buenrostro-Mendez*, Judge Jones rejected a similar argument "that § 1225(b)(2)(A) applies only to aliens who are both 'applicants for admission' and 'seeking admission,'" but "'seeking admission' refers only to those aliens who are actively pursuing lawful entry and submitting themselves to inspection by an immigration officer." *Buenrostro-Mendez*, 2026 WL 323330, at *4. Judge Jones was no more persuaded by this argument than this Court is:

> The text and context of § 1225 contradict the petitioners' reading of the statute. A proper reading begins with the ordinary meaning of the language in § 1225(b)(2)(A). "There is no material disjunction—by the terms of the statute or the English language—between the concept of 'applying' for something and 'seeking' something." *Garibay-Robledo v. Noem*, No. 1:25-CV-177-H, —— F.Supp.3d ——, ——, 2026 WL 81679, at *5 (N.D. Tex. Jan. 9, 2026). When a person applies for something, they are necessarily seeking it. *Compare* Webster's New World College Dictionary 69 (4th ed.) ("apply" means "To make a formal request (to someone for something)"), *with id.* at 1299 ("seek" means "to request, ask for"); *see also* The American Heritage Dictionary of the English Language 63 (1980) ("American Heritage Dictionary") ("apply" means "[t]o request or seek employment, acceptance, or admission"). Just as an applicant to a college seeks admission, an applicant for admission to the United States is "seeking admission" to the same, regardless whether the person actively engages in further affirmative acts to gain admission. The everyday meaning of the statute's terms confirms that being an "applicant for admission" is not a condition independent from "seeking admission."

*Buenrostro-Mendez*, 2026 WL 323330, at *4 (footnotes omitted).

Judge Jones went further, rejecting the petitioners' argument that "seeking" is in the present tense, so that it requires some form of present, affirmative action. *Id.* at *5; *and compare* Hearing Transc. (Mariscal Meraz's argument that "seeking admission" implies some kind of action that is currently happening, which he likened to "they're knocking on the door to come in."). Judge Jones explained,

20

> The petitioners are deemed, by statute, to be applicants for admission pending the resolution of removal proceedings. While they remain applicants, they are presently seeking admission. That "seeking admission" is equivalent to being an "applicant for admission" by operation of law was confirmed by the BIA over a decade ago in *Matter of Lemus-Losa*, 25 I&N Dec. 734, at 743 (2012).

*Buenrostro-Mendez*, 2026 WL 323330, at *5. Judge Jones also rejected the argument that interpreting "applicant for admission" as necessarily entailing "seeking admission" would render "seeking admission" redundant in the text of § 1225(b)(2)(A). *Id.* Judge Jones found that supposed redundancies could not stand in the face of the plain meaning of the statutory text, and "[b]ecause being an applicant ordinarily entails seeking something, it seems natural to use the words somewhat interchangeably." *Id.* Likewise, Judge Jones rejected the argument that "applicant for admission" is a term of art, so that it cannot be understood according to its ordinary meaning because the language of § 1225—and particularly § 1225(a)(3)—demonstrated that "applicants for admission" are a subset of those "seeking admission." *Id.* at *5–6.

Judge Jones also rejected the argument that this interpretation of § 1225 renders portions of § 1226 superfluous:

> Section 1226(a) undeniably does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error. . . . Not only does § 1226(c) sweep in deportable aliens in addition to the inadmissible aliens covered by § 1225(b)(2)(A), *see* 8 U.S.C. § 1226(c)(1)(B)–(C), it also eliminates the option of parole for those to whom it applies.

*Buenrostro-Mendez*, 2026 WL 323330, at *7.

This Court now embraces Judge Jones's additional conclusions as further grounds to reject Mariscal Meraz's attempt to distinguish an "applicant for admission" from an alien "seeking admission."

However, even if "seeking admission" is somehow an additional requirement under § 1225(b)(2)(A), Mariscal Meraz was present and working here and wishes to stay here

21

notwithstanding efforts to remove him. As a matter of plain language, this evidence makes him an "applicant for admission" who is currently "seeking admission."

3. *Mariscal Meraz Fails to Establish that He Does Not Fall under § 1225(b)(2)*

In *Buenrostro-Mendez*, the petitioners made a second concession "that if § 1225(b)(2)(A) applies to them, it would require their detention without eligibility for bond." *Buenrostro-Mendez*, 2026 WL 323330, at \*4. At the hearing, Mariscal Meraz's counsel "concede[d] that if this Court did find that [Mariscal Meraz] was properly included within Section 1225(b)(2), that he would not be eligible for a bond" and "agree[d] that that is what the statutes do say. . . ." Mariscal Meraz could hardly do otherwise. *See Jennings*, 583 U.S. at 297 (explaining that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"); *Buenrostro-Mendez*, 2026 WL 323330, at \*4 ("The statute unambiguously provides for mandatory detention."). Nevertheless, Mariscal Meraz did not agree that he should be included under § 1225(b)(2). He asserts throughout his Amended Petition that he instead falls under § 1226(a), which would permit him to be released on bond. Filing 12 *passim*.

a. Sections 1225(b)(2) and 1226(a) Overlap

In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court stated,

U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 289. However, this statement does not mean that § 1225(b) and § 1226(a) are mutually exclusive, separating aliens "seeking admission" to whom § 1225(b) applies from aliens "already in the country" to whom § 1226(a) applies.

The Supreme Court interpreted § 1225(b) more specifically as follows:

As noted, § 1225(b) applies primarily to aliens seeking entry into the United States ("applicants for admission" in the language of the statute). Section 1225(b)

22

divides these applicants into two categories. First, certain aliens claiming a credible fear of persecution under § 1225(b)(1) "shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Second, aliens falling within the scope of § 1225(b)(2) "shall be detained for a [removal] proceeding." § 1225(b)(2)(A).

Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

*Jennings*, 583 U.S. at 297. Thus, the Supreme Court did not state that § 1225(b) applies only "to aliens seeking entry into the United States"; rather, the Supreme Court said § 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* As a matter of plain language, the additional aliens to whom § 1225(b) applies besides those "seeking entry" are "alien[s] present in the United States who ha[ve] not been admitted" according to the definition of "applicants for admission" in § 1225(a)(1).

The Supreme Court then addressed § 1226:

While the language of §§ 1225(b)(1) and (b)(2) is quite clear, § 1226(c) is even clearer. As noted, § 1226 applies to aliens already present in the United States. Section 1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings. Section 1226(a) also permits the Attorney General to release those aliens on bond, "[e]xcept as provided in subsection (c) of this section." Section 1226(c) in turn states that the Attorney General "shall take into custody any alien" who falls into one of the enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1).

*Jennings*, 583 U.S. at 303. The Supreme Court further explained § 1226's bond provisions as follows:

[A]s noted, § 1226(a) authorizes the Attorney General to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States." As long as the detained alien is not covered by § 1226(c), the Attorney General "may release" the alien on "bond ... or conditional parole." § 1226(a).

23

Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). *Jennings*, 583 U.S. at 306. "[A]lien[s] present in the United States who ha[ve] not been admitted" defined in § 1225(a)(1), to whom § 1225(b)(2) applies, include—as a matter of plain language— the same group of aliens to whom the Supreme Court stated § 1226(a) applies, that is, "aliens already present in the United States." *Jennings*, 583 U.S. at 297.

Thus, the Court concludes that the two statues "overlap" as to aliens that they cover, like a Venn Diagram. As Judge Jones explained it, "It is true that § 1226 applies to aliens in the United States. That it does so, however, does not preclude § 1225 from also applying to such aliens. As the government acknowledges, the two provisions overlap." *Buenrostro-Mendez*, 2026 WL 323330, at *7. To put it another way, some aliens certainly fall within § 1225(b)(2), even if they may also fall within § 1226(a). At the same time, some aliens fall within § 1226 but not within § 1225(b)(2): "Section 1226(a) undeniably does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error." *Id.* In circumstances in which an alien falls within the overlap between the statutes, Respondents may either 1) detain the alien without the possibility of release on bond under § 1225(b)(2), or 2) detain the alien under § 1226(a) and provide the permissive possibility of release on bond. The Court will develop its reasons for this conclusion in more detail in the next subsection.

> b. **Mariscal Meraz May Be Detained under § 1225(b)(2) Even If He Is Also Subject to § 1226(a)**

In *Matter of Hurtado*, 29 I&N Dec. 216 (BIA 2025), the BIA concluded as follows:

> Section 236 [8 U.S.C. § 1226] does not purport to overrule the mandatory detention requirements for arriving aliens and applicants for admission explicitly set forth in section 235(b)(1) and (2) of the INA, 8 U.S.C. § 1225(b)(1), (2). Thus, while an inadmissible alien who establishes that he or she has been present in the United States for over 2 years is not subject to the expedited removal process, the

alien nevertheless "shall be detained for a proceeding under section 240." INA § 235(b)(2)(A), 8 U.S.C. § 1225(b)(2)(A).

*Hurtado*, 29 I&N Dec. at 219–220. In *Hurtado*, the BIA held as follows:

> Under the plain reading of the INA, we affirm the Immigration Judge's determination that he did not have authority over the bond request because aliens who are present in the United States without admission are applicants for admission as defined under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings. *See Jennings*, 583 U.S. at 300[.]

*Hurtado*, 29 I&N Dec. at 220.

Although the reasoning in *Hurtado* is binding upon an immigration judge (IJ), the *Hurtado* decision is not binding upon this Court in this habeas action. Thus, the legal question this Court must decide is whether Mariscal Meraz is an alien who may be detained under § 1225(b)(2). If Mariscal Meraz may be properly detained under § 1225(b)(2), he is not eligible for bond, and he is not entitled to habeas relief in this Court.

The Court concludes that Mariscal Meraz is an alien within the "catchall" scope of § 1225(b)(2) subject to detention without possibility of release on bond through a proceeding on removal under § 1229a. 8 U.S.C. § 1225(b)(2); *Jennings*, 583 U.S. at 287 ("[Section 1225(b)(2)] serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)."). As explained above in § II.B.1., Mariscal Meraz is an "applicant for admission" as defined by § 1225(a) in that he is "[a]n alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a) (defining "applicant for admission"). He is also an "applicant for admission" consistent with the conclusion of the BIA in *Hurtado* and the Supreme Court in *Jennings*. Again, just because Mariscal Meraz illegally remained in this country for years does not mean that he is suddenly not an "applicant for admission" under § 1225(b)(2). Even if Mariscal Meraz might fall within the scope of § 1226(a), he certainly fits within the language of § 1225(b)(2) as well. The Court concludes that the plain

25

language of § 1225(b)(2) and the "all applicants for admission" language of *Jennings* permit the DHS to detain Mariscal Meraz under § 1225(b)(2). *Jennings*, 583 U.S. at 287.

This reading of the overlapping relationship between § 1226(b) and § 1226(a) is not only consistent with the plain language of the two provisions but consistent with the interpretation of the two provisions under *Jennings*. First, § 1226 does not contain language limiting its application "to aliens already present in the United States." *Compare Jennings*, 583 U.S. at 289 (stating that United States immigration law "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)."); *id*. at 303 ("As noted, § 1226 applies to aliens already present in the United States."), *with* 8 U.S.C. § 1226(a) (containing no reference to aliens "present" or "already present" in the United States); 8 U.S.C. § 1226(c) (containing no reference to "criminal aliens" "present" or "already present" in the United States). Consequently, the references to "aliens" in § 1226(a) must be read to include "alien[s] present in the United States who ha[ve] not been admitted" within the meaning of § 1225(a)(1) and within at least the "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)" in § 1225(b)(2). *Jennings*, 583 U.S. at 287.

Thus, Mariscal Meraz falls under § 1225(b)(2) and is not entitled to habeas relief.[4]

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Mariscal Meraz's Petition for Writ of Habeas Corpus, Filing 1, as amended, Filing 12, is denied.

---

[4] Even if Mariscal Meraz is subject to § 1226(a) in addition to § 1225(b), this Court sees no reason why the DHS may not choose to detain Mariscal Meraz under the statute that does not allow for release on bond, § 1225(b). Indeed, in the area of immigration where the executive has considerable discretion, the executive may choose to pursue this civil action in any manner allowed by applicable law.

Dated this 19th day of February, 2026.

BY THE COURT:

_____

Brian C. Buescher
United States District Judge